IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| REUBEN PEREZ, | § | |
| (TDCJ No.490335) | § | |
| VS. | § | CIVIL ACTION NO.4:07-CV-623-Y |
| | § | |
| | § | |
| DEE ANDERSON, Sheriff, | § | |
| Tarrant County, Texas, et al. | § | |

## OPINION AND ORDER GRANTING DEFENDANT ALAN BYRD'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ruben Perez has claims remaining against individual defendant Alan Byrd, M.D. ("Byrd").[1] Pending before the Court is defendant Byrd's motion for summary judgment along with a brief in support, and a supplemental appendix. By the motion for summary judgment, Byrd asserts a qualified-immunity defense to Perez's claim that Byrd was deliberately indifferent to his serious medical needs. Perez filed a response to the motion for summary judgment. For the reasons set forth herein, the Court concludes that Byrd's motion for summary judgment must be granted.

*Summary-Judgment Evidence*

Byrd has filed a supplemental appendix[2] in support of his motion for summary judgment which includes: the affidavit of Alan Byrd, M.D., dated October 13, 2010 (Exhibit A), and the answers

---

[1] All other claims and defendants have been dismissed under authority of 28 U.S.C. §§ 1915A and 1915(e)(2)(B) or through the granting of a dispositive motion.

[2] The initial appendix included only an affidavit of Alan Byrd, M.D. Because the supplemental appendix includes essentially the same substantive assertions in an affidavit Byrd signed later, which also contained citations to relevant records, the Court has considered only the supplemental appendix.

given by Lisa D'Cunha, Custodian of Medical Records for the Texas Department of Criminal Justice, Health Service Archives ("TDCJ") (Exhibit B), along with 477 pages of attached medical records of TDCJ (Exhibit C) during a deposition upon written questions. Byrd also incorporated in his affidavit, as permitted by prior Court order, the Appendix previously filed in support of the motion for summary judgment of co-defendant Meredith Edwards, R.N. The Edwards Appendix included, in relevant part, the affidavit of Judy Thomas, dated March 9, 2010, along with 104 pages of records of the Tarrant County Hospital District (pp. 1-105); and the affidavit of Jerry Rucker, dated May 3, 2010, along with 168 pages of records of the Tarrant County Sheriff's Department (pp. 106-274). Although Perez filed a response to Byrd's motion for summary judgment, he did not file any supporting evidence to contest it. In particular, even though the Court provided Perez the opportunity to respond to Byrd's supplemental appendix, Perez did not file any additional response. As Perez swore that his amended complaint was true and correct under penalty of perjury, however, this Court is required to consider that document as competent summary-judgment evidence.[3]

*Summary-Judgment Standard*

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that

---

[3] *See Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir. 1989). Although Perez filed a Rule 7 reply, he did not swear to the contents of that document.

the moving party is entitled to judgment as a matter of law."[4] The party moving for summary judgment has the initial burden of informing the Court of the basis for his motion and producing evidence that tends to show that no genuine dispute as to any material fact exists and that he is entitled to judgment as a matter of law.[5] Once the moving party has made such a showing, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.[6] Whether an issue is "genuine" is a determination of whether it is "real and substantial, as opposed to merely formal, pretended, or a sham."[7] A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.[8] No genuine issue of material fact exists if no rational trier of fact could find for the nonmoving party based on the evidence presented.[9] The Court must consider all evidence in the light most favorable to the

---

[4] FED. R. CIV. P. 56(c)(2).

[5] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

[6] *Id.*, at 322-23; *Anderson,* 477 U.S. at 257.

[7] *Bazan ex rel. Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001)(noting that only genuine and substantial issues may subject a defendant to the burden of trial in qualified immunity context)(quoting *Wilkinson v. Powell,* 149 F.2d 335, 337 (5th Cir. 1945).

[8] *See Anderson,* 477 U.S. at 248.

[9] *See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 712-13 (5th Cir. 1994).

nonmoving party.[10]

*Facts*

Perez was admitted to the Tarrant County jail ("TCJ") in June, 2007. (Edwards Appendix (App.) 49-50.) Perez requested health services for a possible fracture of his right wrist on August 2, 2007. (Edwards App. 103.) He was seen and examined by a triage nurse on August 5, 2007, and then referred to an orthopedic clinic. (Edwards App. 70.) Perez was involved in a fight with other inmates on August 7, 2007. (Edwards App. 164-66, 170.) Perez was evaluated and treated for minor bruising and abrasions soon after the fight by an emergency medical technician. (Edwards App. 176.) The next day, August 8, 2007, Perez was examined by a registered nurse, who documented minor bruising and abrasions. (Edwards App. 72.) Perez's sole complaint of pain was from his right wrist, which injury he confirmed was preexisting. (Edwards App. 72.) The nurse noted that Perez was scheduled for orthopedic service. (Edwards App. 72.) Records indicate that Perez then refused "ortho" treatment. (Edwards App. 90) In the time after the August 7, 2007, incident, and prior to his first appointment with Dr. Byrd, Perez was seen by medical-care providers on August 23, 2007 (Zac Kelly, M.D.); August 28, 2007 (x-ray); September 5, 2007 (Douglas Greene, M.D.); September 6, 2007 (orthopedic surgeon); and September 21, 2007 (Dr. Greene).(Byrd Affidavit ¶¶ 7-17; Edwards App. 67, 41, 61, 65, and

---

[10]*See Id.* at 713.

4

63.)

Defendant Byrd first saw and provided medical care to Perez on October 4, 2007, and thereafter periodically provided medical care and treatment to Perez through January 16, 2008. (Byrd ¶ 32; Edwards App. 62, 98, 58, 53)  Although records indicate that Perez made multiple complaints to jail officials of pain in his wrist, and then added complaints about pain in his head and back, Byrd did not become aware of Perez's complaints until he first met and examined Perez on October 4, 2007. (Byrd ¶ 32.)  Byrd noted at that time that Perez had been seen by medical providers numerous times, and was awaiting a scheduled MRI on his right wrist. (Byrd ¶ 32; Edwards App. 62.)  A CT scan of Perez's head and face, and an MRI of the right wrist, were conducted on October 9, 2007. (Edwards App. 43-44.) Neither test revealed any substantial health risk or abnormalities. (Byrd ¶ 32; Edwards App 43-44.) Perez saw another physician on October 16, 2007, and then again saw Byrd on November 15, 2007. (Edwards App. 60.) At the time, Byrd examined Perez, ordered x-rays of Perez's back, ordered laboratory work, and prescribed pain medication and follow-up exams. (Byrd ¶ 32; Edwards App. 60.)  Byrd again saw Perez on December 10, 2007, and on January 16, 2008. (Byrd ¶ 32; Edwards App. 58, 53.) Although Perez's head, face, lower back and wrist were the subject of multiple exams, as well as x-rays, CT scans, and MRI's, none of theses tests or exams ever indicated the presence of any abnormality that presented a substantial risk to Perez's health.

5

(Byrd ¶ 32; Edwards App. 2-3, 9-31, 36-44, 51-62.) These records indicate that Perez was examined by Byrd, as well as at least three other physicians during the period between early October 2007 and Perez's transfer out of TCJ. (Byrd ¶ 32.) Each of the medical providers prescribed a course of diagnostic services, treatment, and follow-up examinations similar to those prescribed by Byrd. (Byrd ¶ 32; Edwards App. 43, 53, 58, 61, and 62.)

After his discharge from TCJ, Perez was received into a Texas Department of Criminal Justice ("TDCJ") facility in late January 2008. (Byrd, Ex. C, 253-256.) Although Perez still had a cast on the right wrist at that time, upon examination the cast was removed and replaced with a splint that was to be removed a few days later. (Byrd, Ex. C.350-352.) In March 2008, Perez complained of right arm pain and "wanted a restriction," but examination revealed "no right arm deformity, intact motor, no limit ambulation . . . no deformity, no bony tenderness," and no treatment was listed for such complaint. (Byrd, Ex. C 288.) In May 2008, Perez again complained of "decreased strength in his right wrist," but the notes reflect that an X-ray of the right forearm [of] 1/28/2008 [showed]: no acute fracture or bone pathology," and an examination of Perez's right wrist found "full range of motion and grip strength of 5/5, but decreased ability to resist force when Perez attempted to flex his wrist."(Byrd, Ex. C 330.) Beyond these resolved complaints, a Texas Uniform Health Status Update form for Perez dated April 22, 2008, indicated that Perez then had no

6

current problems. (Byrd, Ex. C 349) In August 2008, Perez had a pre-segregation medical evaluation that identified no orthopedic injuries and normal range of motion in his upper and lower extremities. (Byrd, Ex. C 443.) Another examination on August 25, 2008 noted "no significant injury," identified no orthopedic injuries, and specifically reflected normal range of motion in his upper and lower extremities. (Byrd, Ex. C 440-442.) Perez had a comprehensive orthopedic and neurological exam on November 7, 2008, for continued subjective complaints of pain but, upon examination, Perez had a full range of motion in the affected areas, and had no swelling/bruising in the lower back or wrist area and, other than a prescription for Ibuprofen, no additional treatment was prescribed. (Byrd Ex. C. 401-404.)

*Analysis--Qualified Immunity*

Byrd seeks summary judgment on the basis that he is entitled to qualified immunity from Plaintiff's claim of constitutional violation. Qualified immunity protects government officials performing discretionary functions from personal liability as long as their conduct violates no clearly-established constitutional or federal statutory rights.[11] To overcome such an official's immunity from suit, a plaintiff must allege and, eventually, prove a violation of a right so apparent or so obvious that a reasonable official would understand that what he is doing violates that

---

[11]*See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Sorenson v. Ferrie,* 134 F.3d 325, 327 (5th Cir. 1998).

right.[12] In *Saucier v. Katz*,[13] the Supreme Court mandated a two-step sequence to resolve a qualified-immunity claim: first, a court determines whether the facts alleged or shown state a violation of a constitutional right; second, a court must decide whether the right was clearly established at the time of the defendant's conduct.[14] In the recent case *Pearson v. Callahan*,[15] however, the Supreme Court retreated somewhat from this sequential approach:

> while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.[16]

Although *Pearson* thus authorizes this Court to resolve the qualified-immunity issue through analysis under the second step, the Court concludes that it is appropriate to address and resolve the motion in this instance by analyzing the first step of the qualified-immunity inquiry.[17]

*Violation of a Constitutional Right*

---

[12]*See Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

[13]533 U.S. 194 (2001).

[14]*Id.* at 201.

[15]129 S.Ct. 808 (2009).

[16]*Id.* at 818.

[17]*See generally Pearson,* 129 S.Ct. at 821 ("Our decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases.")

8

Perez alleges that Byrd denied and neglected his serious medical needs. As Perez was apparently a pre-trial detainee at the time of the events made the basis of this case, his rights flow from the procedural and substantive guarantees of the Fourteenth Amendment.[18] The Fourteenth Amendment protects the detainee's right to be free from punishment prior to an adjudication of guilt.[19] The Fourteenth Amendment also requires the state to provide for the basic human needs of pre-trial detainees, including the right to adequate medical care.[20]

To establish a violation of this constitutional right, a detainee must show that the defendant acted with deliberate indifference to his serious medical needs.[21] To make a claim of deliberate indifference, a plaintiff must demonstrate that the defendant official has actual subjective knowledge of a substantial risk of serious harm, but responds with deliberate indifference to that risk.[22] Such a finding of deliberate indifference, though, "must rest on facts clearly evincing 'wanton' actions on the parts

---

[18]*Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525-26 (5th Cir. 1999).

[19]*See Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979).

[20]*Lacy v. Shaw,* 357 Fed. Appx. 607, 2009 WL 4885183, at *2 (5th Cir. Dec. 16, 2009)(citing *Hare,* 74 *v. City of Corinth,* 74 F.3d 633, 639 (5th Cir. 1996), *appeal after subsequent remand,* 135 F.3d 320, 327 (5th Cir. 1998)); *see also Carter v. Reach,* NO. 09-60776, 2010 WL 4272466, at *1, (5th Cir. Oct. 29, 2010).

[21]*Lacy,* 2009 WL 4885183, at *2.

[22]*See Hare,* 74 F.3d at 648.

of the defendants."²³ This subjective deliberate-indifference standard is now equated with the standard for criminal recklessness:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.²⁴

In the medical care context, a detainee must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."²⁵ A delay in providing medical care is not a violation of this constitutional right unless it results in substantial harm.²⁶ Allegations of negligence in the provision of medical care are not sufficient to maintain an action under 42 U.S.C. § 1983.²⁷ A disagreement of opinion as to the correct medication and/or medical treatment does not constitute an actionable civil-rights claim, but at most, a possible claim of

---

²³*Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985); *see also Wilson v. Seiter,* 501 U.S. 294, 297 (1991).

²⁴*Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *see also Hare,* 74 F.3d at 648.

²⁵*Lacy,* 2009 WL 4885183, at *2 (citing *Johnson,* 759 F.2d at 1238)).

²⁶*Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).

²⁷*See, e.g., Daniels v. Williams,* 474 U.S. 327, 332 (1986) (concluding that the Constitution "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property").

medical malpractice addressed under state law.[28] Deliberate indifference, rather, encompasses only "'unnecessary and wanton infliction of pain' or acts 'repugnant to the conscience of mankind.'"[29]

In his amended complaint, Perez alleges that after he was involved in an assault from other inmates in August 2007, defendant Byrd

> continually denied and neglected Perez's serious medical needs until finally they could not deny that plaintiff Perez did indeed require medical treatment and real pain relief. Perez was never fully diagnosed and treated other than for his wrist injury. Perez was x-rayed and found to be injured and suffering, but would no longer be in Tarrant County's custody. (Amend Compl. Attachment p. 4.)

Perez has not responded to the motion for summary judgment of Byrd and has not supplied any evidence to rebut the evidence submitted by Byrd. The evidence shows that Perez received immediate medical care for minor bruises and abrasions on August 7, 2007, and again on August 8, 2007. Thereafter, Perez received comprehensive medical care and treatment through multiple examinations by Byrd, another family physician, and at least two orthopedic physicians. Those visits included physical exams, assessments, radiographic studies, and provision of medications. Neither Byrd nor any of the

---

[28]*See Estelle v. Gamble,* 429 U.S. 97, 107 (1976); *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997); *see generally Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)("Furthermore the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'")(quoting *Estelle*, 429 U.S. at 107)).

[29]*Carter,* 2010 WL 4272466, at *1 (quoting *Estelle,* 429 U.S. at 105-06).

other physicians or providers who treated Perez, from August 7, 2007, until his transfer out of TCJ, found that Perez suffered a serious injury or suffered from a present or future substantial risk of serious harm.

Further, the evidence shows that Byrd did not have knowledge of any substantial risk to Perez's future health. Byrd periodically provided medical care and treatment to Perez from October 4, 2007, through January 16, 2008. Although Perez complained of pain, Byrd analyzed the previous studies ordered by an orthopedic consultation and also ordered additional x-rays to determine the existence of any objective indication of underlying pathology that could be causing pain. None of the studies, including the x-rays ordered by Byrd, revealed any traumatic injury; and the examinations by Byrd and other physicians failed to reveal any health risk. In sum, the evidence shows that Byrd did not have a subjective knowledge of any substantial risk of serious harm to Perez.

Further, the evidence shows that, contrary to acting with deliberate indifference, once Byrd was aware of Perez's injuries and complaints he attempted to properly diagnose and treat them. Byrd saw and examined Perez once a month from October 4,2007, through January 16, 2008, and ordered that numerous tests be conducted. In this same time frame, Perez saw other providers and received other examinations. Despite the fact that Perez's head, face, lower back and wrist were the subject of multiple exams as well as x-rays, CT scans, and MRIs, none of these exams indicated the presence of any abnormality that presented a substantial risk

to Perez. The evidence totally refutes Perez's allegations of deliberate indifference. Perez received substantial care from Byrd and at his direction over the course of the last several months Perez was housed at TCJ. Even if the fact that Perez continued to complain of subjective pain symptoms shows that the treatment afforded to him was ineffective, the fact that Byrd did not ignore Perez's complaints, but rather, in good faith, undertook a course of treatment, is sufficient to rebut Perez's claim of deliberate indifference.[30]

The medical records presented in support of Byrd's motion for summary judgment demonstrate that rather than ignoring Perez's medical needs, Byrd responded by acted properly and within the standard of care. Perez received comprehensive and timely medical care for his claimed injuries and pain. In order to establish a genuine issue of material fact, non-moving-party Perez must "'go beyond the pleadings,' and by affidavits or other competent summary judgment evidence cite 'specific facts' that show there is a genuine issue for trial."[31] Perez cannot defeat summary judgment "with conclusory allegations, unsubstantiated assertions or 'only

---

[30] *See generally Gobert v. Caldwell,* 463 F.3d 339, 351-52 (5th cir. 2006)(where the Court concluded that the "record of extensive medical treatment spanning the final two and one half months of Gobert's incarceration and the lack of evidence to establish the necessary culpable intent" precluded finding deliberate indifference as a matter of law); *Bejaran v. Cruz,* 79 Fed. Appx. 73, 74 (5th cir. 2003)(plaintiff's admission that "prison medical staff took x-rays of his back and gave him 'generic,' 'mild medications' to treat his injuries refute his assertion of deliberate indifference to his medical needs").

[31] *See Bustos v. Martini Club Inc.,* 599 F.3d 458, 468 (5th Cir. 2010)(quoting *Celotex,* 477 U.S. at 324)).

13

a scintilla of evidence.'"[32] As Perez has not provided any evidence in response to Byrd's motion for summary judgment, he has not met his burden to show that Byrd violated his constitutional right to be free of deliberate indifference to his serious medical needs and thus, that Byrd is not entitled to qualified immunity.[33]

Quite to the contrary, the undisputed, competent summary-judgment evidence reveals that plaintiff Perez was not subjected to deliberate indifference to his serious medical needs by defendant Byrd. Defendant Byrd is entitled to summary judgment based on qualified immunity because plaintiff Perez has not satisfied the first element of the qualified-immunity analysis.[34]

*ORDER*

Therefore, Alan Byrd, M.D.'s May 7, 2010, motion for summary judgment (doc. 61) is GRANTED. Plaintiff shall take nothing on his claims against defendant Alan Byrd, M.D., and such claims are DISMISSED WITH PREJUDICE.

SIGNED December 14, 2010.

*[signature]*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[32]*See Hathaway v. Bazany,* 507 F.3d 312, 319 (5th Cir. 2007)(internal citations omitted).

[33]*See generally Id.,* (noting that once a movant comes forward with the qualified immunity defense, the evidentiary burden is on the non-movant plaintiff to show that defendants are not entitled to qualified immunity.)

[34]Although the Court does not need to reach the second prong of the qualified immunity inquiry, whether Byrd violated a clearly established right of which a reasonable person would have known, alternatively, Perez has not met the second prong for the reasons stated in Byrd's brief in support of the motion for summary judgment at pages 14-16.